Donald L. PREUSS, Beulah R. Hajek, Aubrey L. Pendley, Harry L. Markham, Charles T. Ross, Ewing Rascoe, Ralph Romans, William E. Morris and Winfred P. Wheeler, Appellants,

v.

BOARD OF EDUCATION OF DAVIESS COUNTY, Kentucky; George Overstreet, Individually and in his Official Capacity as Superintendent of the Daviess County Schools; and Glenn Duncan, In his Official Capacity as Superintendent of the Daviess County Schools, Appellees.

Court of Appeals of Kentucky.

Feb. 3, 1984.

Discretionary Review Denied by Supreme Court May 2, 1984.

Jennifer B. Coffman, Brooks, Coffman & Fitzpatrick, Lexington, for appellants.

David L. Yewell, Rummage, Kamuf, Yewell & Pace, Frank Stainback, Jr., Lizbeth Ann Tully, Holbrook, Gary, Wible & Sullivan, P.S.C., Owensboro, for appellees.

Before HAYES, C.J., and HOGGE * and WHITE, JJ.

HAYES, Chief Judge.

The issue in this case is whether the salaries paid to the appellants, administrators in the Daviess County School System, were reduced in the years 1976–1977, 1977–1978, and 1978–1979, by the appellees, Board of Education of Daviess County, Kentucky, and George Overstreet, Superintendent of the Board, in violation of KRS 161.760.

Prior to the 1976–1977 school year, school principals and other administrators in Daviess County were paid a salary comprised of a base salary determined by the single salary schedule which each district is required by the Minimum Foundation Act to apply to all certified personnel. KRS 157.350(3) and 157.320(12). In addition each received extended employment pay which was calculated by multiplying the number of days worked in excess of 185 by his daily salary. Finally, each received an additional sum for the extra services performed based upon an index figure.

Beginning with the 1976–1977 school year, Dr. Overstreet, with the Board's approval, implemented a new method of paying administrators. Thereunder, administrative salaries were no longer figured by adding the three components of base pay,

extended pay and extra service pay but were taken from an administrative salary schedule devised by Overstreet which consisted of a bottom line figure based on experience and the responsibilities of the particular job. It was only when reporting the salaries to the State Department of Education, so that agency could determine whether the school district was complying with the dictates of the Minimum Foundation Act, that the administrative salaries were broken down into component parts.

This action was originally commenced below by the appellant, Donald L. Preuss, an elementary school principal. He alleged in his complaint that although his total salary increased in each year in issue, the amount he received for extra service pay actually decreased. The record is clear that his bottom line salary, derived from the administrative salary schedule, was raised at a lower rate than was his base salary taken from the single salary schedule resulting in the reduction of the compensation for extra services he performed. Indeed, in 1975–1976 Preuss received $1,900.00 for extra services which by 1978–1979 was reduced to zero.

On September 18, 1981, after submission to the court on cross-motions for summary judgment, the trial court ruled that Preuss had incurred a salary reduction as contemplated by KRS 161.760 and was entitled to back pay for extra services. Overstreet was dismissed as a party in both his personal and official capacities. The Board thereafter moved the court pursuant to CR 59.05 to amend the judgment, and the court granted a new trial on the issue of whether the salary reduction was a uniform plan affecting the entire district. Before the case was concluded, the remaining appellants filed their complaint raising issues identical to those raised by Preuss. The trial court on its own motion ordered the cases to be consolidated. On December 17, 1982, the court entered its opinion and judgment and held that the salary reductions were part of a uniform plan affecting the entire district and thus did not violate

---

* The decision in this case was made prior to Judge Hogge's departure from the Court.

KRS 161.760. Preuss was awarded $1,887.00 for extended pay, improperly calculated, but was not awarded any additional pay for extra service.

During the school years involved, KRS 161.760(1) provided in part as follows:

Each board of education shall cause notice to be given annually not later than July 1 to each teacher who holds a contract valid for the succeeding school year, stating the best estimate as to the salary to be paid such teacher during such year. Such salary shall not be lower than the salary paid during the preceding school year unless such reduction be a part of a uniform plan affecting the entire district, or unless there is a reduction or elimination of extra service, administrative and/or supervisory duties and responsibilities of the teacher or other certified personnel.

The appellees strenuously argue that Preuss and the other appellants did not suffer a reduction in salary necessary to trigger the notice requirements of the statute because the appellants' *total* salary increased every year. The appellants argue however that the statute requires that the school board provide notice if any one component of the total salary is to be reduced.

■ The trial court correctly interpreted our holding in *Cook v. Board of Education of Carter County*, Ky.App., 576 S.W.2d 270 (1979), when ruling that Preuss had incurred a "reduction" in salary. In the *Cook* case, *supra*, we held that a head-teacher, who was reassigned to the classroom with an accompanying reduction in his extra service pay, suffered a reduction in salary as contemplated by KRS 161.760 even though his total salary for the year increased. Thus, although our statutes do not require a school district to compensate its certified personnel for extra services, once extra compensation is paid, no reduction thereof may be made except in the two situations allowed by KRS 161.760(1). As the appellants' duties were not decreased and as they were not provided notice of the reduction in salary, the reductions were

validly made only if the administrative salary schedule was a part of a uniform plan affecting the entire district.

■ On this issue the appellants rely on *Greenup County Board of Education v. Harper*, Ky., 256 S.W.2d 37 (1953), which held that a salary reduction affecting only principals and not classroom teachers is not a plan affecting the entire district. We agree with the trial court that the *Harper* case is not controlling and adopt the following portion of the trial court's opinion and judgment concerning this issue:

"In this Court's view, two things have effectively diluted whatever force *Harper* may have originally had as case law authority. In the first place, the Minimum Foundation Act was enacted in 1954. This legislation and the multitude of regulations adopted pursuant thereto gave life to the single salary schedule and the concept of the three components of salary, viz., base salary, extended employment pay and extra service pay. Under the legislation the state funds the first two components in all local districts so long as certain requirements are met. It does not fund the extra service component but leaves that to the sole discretion of the local district.

"In the second place, the decision in *Cook, supra*, left no doubt that the component of salary concept is a real, viable principle and that a reduction in any component is a 'reduction in salary' nonetheless even though total salary may increase. These principles were not law in 1953 when *Harper* was decided and Judge Cammack had no reason to analyze the case in terms of components of salary. He had only to look at the facts and see that Mrs. Harper's salary had been reduced, that the salaries of teachers had not been reduced, and that the statute seemed to make no distinction. If one were to look at Plaintiff's situation from the same simplistic concept that Judge Cammack had to work with in 1953 Plaintiff would have no case in the first place because he suffered no actual reduction in total salary—it increased each year. It is only because of *Cook*'s component of salary principle that Plaintiff is in Court in the first place but he wants

to rely on *Harper* also on the question of uniformity. This Court is of the opinion the two cases are inherently at odds. If it is true that decrease of a component of salary for extra service (which only administrators are paid) is a decrease in salary even though total salary increases as Plaintiff has successfully argued, then it must also follow that teachers don't have to be decreased in order to have uniformity. Why not—because they perform no extra service and are paid for none. If the reduction of Plaintiff's salary had been in the 'base salary' component teachers would also have had to be reduced in order for the plan to have been uniform because teachers and administrators of the same rank and experience are paid the same base salary. But that was not the case here. The reduction decreased only a component of salary paid to principals, hence in order to be uniform it is necessary only that all principals with the same education, experience and other classifying factors received the same pay throughout the entire system. The Court is satisfied that was done."

The judgment of the Daviess Circuit Court is affirmed.

All concur.